David Alan COPELAND, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–87–00304–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 4, 1988.

Richard Frankoff, Houston, for appellant.

John B. Holmes, Dist. Atty. of Harris County, Lynn Parsons, Asst. Dist. Atty., for appellee.

Before EVANS, C.J., and SAM BASS and DUGGAN, JJ.

EVANS, Chief Justice.

Appellant was convicted of possession of marijuana in a usable quantity of more than two ounces and less than four ounces. A jury found appellant guilty as charged, and the trial court assessed his punishment at 15 days confinement and a fine of $500.

In his first two points of error, appellant challenges the sufficiency of the evidence to prove: (1) that he exercised care, custody, and control over the controlled substance, and (2) that he knowingly possessed the controlled substance. In reviewing these points, we are required to consider the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

■ To establish a defendant's "unlawful possession" of a controlled substance, the State must prove: (1) that the accused exercised care, custody, and control over the substance, and (2) that the accused knew that the substance possessed was contraband. *Deshong v. State,* 625 S.W.2d 327 (Tex.Crim.App.1981). If the proof does not show that the accused was in exclusive control of the premises where the substance was found, the State must offer additional independent facts and circumstances that affirmatively link the accused to the contraband. *Wiersing v. State,* 571 S.W.2d 188 (Tex.Crim.App.1978).

Appellant was arrested after a Houston police officer found a baggie of marijuana on the floorboard of a vehicle in which appellant was riding as a passenger. Officer Michael L. Wright testified that he and a fellow patrolman observed a speeding pickup truck going east-bound on Richmond Avenue. The officers stopped the vehicle at the overpass of the West Loop at Richmond Avenue in Houston. Officer Wright proceeded to the passenger side of the truck, and after "making sure" that "everything was okay," he went to the front of the vehicle to check the license plate and inspection sticker. He then went to the window on the passenger side and "made another scan for any type of weapon that might be lying on the seat or on the floor." To do this, he used his flashlight, shining it down "to see in the cracks of the floorboard, and ... between the seats and the console." The officer observed a transparent plastic bag "with some type of green leafy substance that was sticking about halfway out." Based on his extensive experience, he recognized the substance "to be possible marijuana." The baggie was "sticking halfway out right in the center of the seat on the floorboard." Officer Wright told appellant to get out of the vehicle. Appellant complied, and the officer then reached down and retrieved the bag of leafy substance. The officer demonstrated to the jury the approximate size and length of the baggie, and stated that it was full of the leafy substance. He said that appellant was positioned in the seat so that he could have reached down and touched the marijuana, if he had chosen to do so. He said that appellant did not say anything at that time, and that he was cooperative.

Appellant testified in his own defense. He said he met Thomas Christian, the driver of the pickup truck, in the parking lot of Cooters restaurant, where he and Christian both worked. He got in the truck with Christian, who told him that he had to meet somebody. He talked to Christian for about 30 minutes, and then told Christian he had to go home. Christian said he would give appellant a ride home, and they were evidently driving to appellant's home when their vehicle was stopped by the police. At some point (either as Christian was pulling over to the side or as the officers approached the vehicle), Christian pulled the baggie of marijuana from the inside of his jacket and dropped it "down

by the seat" on the passenger side. He did not "tuck it under the seat," but he asked appellant to do so. The State does not contend there is any evidence that appellant actually touched the baggie of marijuana. Appellant testified that he did not tell the officer the baggie did not belong to him, because, he said, Christian admitted to the officers that it was his marijuana. Appellant said he felt no need to deny that the marijuana was his, because he "didn't see why I was involved in it." He said that Christian was the one that was "saying everything." Appellant denied that he smoked marijuana or had gone to meet Christian to buy marijuana from him. He said Christian was a "good" friend and admitted that he had seen Christian smoke marijuana on "maybe one" occasion.

The State contends that there are six affirmative links connecting appellant with the contraband: (1) the marijuana baggie was in plain sight and clearly visible to the police officers; (2) the amount of marijuana seized was of a quantity, in a transparent plastic baggie, sufficient to make anyone aware of its presence; (3) the area in which the contraband was discovered was small and enclosed; (4) the position of the marijuana on the floorboard made it conveniently accessible to appellant; (5) appellant's own testimony shows that he not only knew what marijuana was, but that he had seen it before and was familiar with its use; and (6) appellant's failure to make any furtive gestures, after the truck stopped, was sufficient for the jury to infer that he had dropped the marijuana from his pocket, between his legs.

We agree with the State that the marijuana baggie was in plain sight and clearly visible, both to the police officer and to appellant. Indeed, appellant's own testimony shows that he was aware of the presence of the baggie and knew that it contained marijuana. We also agree with the State's analysis that the marijuana was found in a small, enclosed area that was conveniently accessible to appellant. We question, however, the State's argument that appellant's failure to make any "fur-

tive gestures" constituted some basis for an inference of guilt.

We conclude that the State's evidence constituted some proof that appellant knew that the baggie contained a contraband substance, so that the second element of the offense was established. But we further conclude that the State failed to prove that the accused exercised care, custody, and control over that substance.

The State's proof did establish that appellant was situated in close proximity to the baggie and that he knew it contained marijuana. Appellant testified:

Q: Was the marijuana not positioned under or on the floorboard between your legs?

A: It was sort of like underneath. He dropped it right by the brake. He sort of pitched it down.

But the State was required to show more than the fact that the accused was in close proximity to the contraband. It was required to prove that the substance was within his *actual* care, custody, or control. In the absence of proof showing that appellant was in exclusive control of the area where the contraband was found, the State was required to offer some additional "independent" facts or circumstances that affirmatively linked appellant to it. *Wiersing*, 571 S.W.2d at 190.

The evidence raised two equally reasonable hypotheses, one of which was consistent with appellant's innocence and the other with his guilt. The trier of fact might reasonably have concluded from the evidence either that (1) Christian, the driver of the vehicle, threw the marijuana on the floorboard in front of appellant, or (2) appellant himself dropped it on the floor. Based on appellant's own testimony, it cannot reasonably be argued that some other source might have placed the marijuana in the truck.

We hold that the circumstantial evidence presented by the State amounts only to a "strong suspicion" and shows only a "mere probability" that appellant exercised *actual* care, custody, control, or management of the contraband. *See Guiton v. State*, 742 S.W.2d 5 (Tex.Crim.App.1987); *Humason*

*v. State,* 728 S.W.2d 363, 366–67 (Tex.Crim. App.1987); *Moore v. State,* 640 S.W.2d 300, 302 (Tex.Crim.App.1982); *compare Deshong,* 625 S.W.2d at 329.

We further note that the State did not call the driver, Thomas Christian, as a direct or rebuttal witness, and did not account for its failure to do so. These circumstances provide an additional basis for our conclusion that the evidence is insufficient to support the conviction.

> Where circumstantial evidence relied on by the prosecution is somewhat weak and where the record on appeal affirmatively shows not only that other testimony which would cast additional light on the facts was available to the prosecution, but also that the prosecution did not introduce such other evidence or satisfactorily account for its failure to do so, the appellate court will treat the case as one showing reasonable doubt of the sufficiency of the evidence to support the conviction. (Citations omitted.)

*Waldon v. State,* 579 S.W.2d 499, 502 (Tex. Crim.App.1979).

We sustain appellant's first two points of error.

Because of our disposition of appellant's first two points of error, we do not consider the third point in which he contends that the trial court committed reversible error in refusing his requested instruction to the jury.

The judgment of the trial court is reversed, and a judgment of acquittal is directed.